## CLUTE vs. BRIGGS and others.

1. A mill dam at the very threshold of an innavigable outlet of a lake, damming up the waters of the lake (but not of the outlet), is within the Mill Dam Law.
2. It is immaterial whether the lake was navigable or not.
3. That a stream was not meandered by the United States surveyors, raises a presumption that it is not navigable.

APPEAL from the Circuit Court for *Dane* County.

Action for the flowage of land by a dam. The substance of the complaint is stated in the opinion. On the trial, the plaintiff asked a witness: " Where, with

reference to the mill of the defendants, are the dam and embankment, and what their extent?" Objection sustained. The plaintiff then offered to prove that the dam was not built across the stream or outlet connecting Fourth Lake with Third Lake, and does not dam up said stream, but that it is erected on the shore of Fourth Lake, and dams only the waters of said lake, and for that purpose asked a witness: "Where, with reference to the outlet or creek, is the dam constructed?" Objections sustained. The plaintiff then asked leave to amend the complaint, by stating that the dam was "above the head of the outlet and within the borders of the said lake," which leave was denied. The plaintiff also offered in evidence a certificate from the commissioner of the general land office, showing that the stream connecting Fourth and Third Lakes was not meandered by the surveyors, and that the lakes were meandered. The court ordered a nonsuit, upon the ground that an action would lie under the Mill Dam Law only; and the plaintiff appealed.

*B. E. Hutchinson*, for appellant:

1. It devolved upon the defendants to bring themselves within the Mill Dam Law by showing that their dam was across a stream not navigable. That the stream connecting the lakes had not been meandered, is not proof that it was not navigable. 19 Wis., 417. 2. The plaintiff should have been permitted to prove that the dam closed the outlet, and raised the body of the water in the lake, and was not across the outlet itself. The embankment along the lake shore on each side of the outlet, many rods in length, is chargeable with a portion of the alleged damage. Will the erection of a dam at an outlet only six inches deep, and which contributes not a drop of water to the power created, authorize the surrounding of the entire lake with an embankment? If the suit had been under the Mill Dam

Law, the defendants would have defeated it by proving that they had dammed only the lake, which is navigable. Counsel cited also 17 Wis., 416; 16 id., 661; 12 Pick., 68, 556; *Woodman v. Kilbourn Manf. Co.*, Am. Law Reg., Feb., 1866.

*Stevens, Lewis & Flower* and *Geo. B. Smith*, for respondents.

COLE, J. The real question in this case is, whether the plaintiff, whose lands have been injuriously flowed, must resort for redress to the remedy given by the Mill Dam Law, or whether, under the circumstances, he may bring his common law action. It is alleged in the complaint, that the defendants have, for more than two years last past, kept up and maintained an embankment on the eastern shore of Fourth Lake—a navigable body of water—which embankment extends about one hundred rods along the shores thereof; and have also kept up and maintained a dam at the outlet of the lake, for the purpose of creating a water power for the use of a certain mill and woolen factory there situated; by which embankment and dam the waters of the lake are obstructed in their natural flow, and are raised above their natural level, by means whereof the lands of the plaintiff, situated upon the western shore of the lake, are undermined, broken down, washed away and overflowed, to the extent of about fifty acres. It was admitted in the answer that the defendants kept up and maintained an embankment and dam as stated in the complaint, and that thereby the waters of the lake were raised above their natural level. On the trial, the plaintiff offered to prove that Fourth Lake was navigable in fact; but this evidence was objected to and ruled out, for the reason that it was immaterial. The plaintiff further offered to prove that the dam is not constructed across the stream connecting Fourth with Third Lake, which is the outlet of Fourth Lake, and that it does not dam that stream, but is erected upon the

shore of the Fourth Lake, and dams only the waters of the lake. This evidence was likewise excluded. It appeared, however, that the stream connecting the Third and Fourth Lake had not been meandered by the United States deputy surveyors; and the last offer made by the plaintiff fairly assumes that this stream was not navigable in fact. For where a stream is not meandered, the presumption doubtless is, in the absence of all testimony to show the contrary, that such stream is innavigable. But the dam was erected at the very threshold of the outlet, not, however, damming or obstructing the waters in this innavigable stream, but only damming the waters of the lake. And the question is, Must the plaintiff, whose lands are injured in consequence of the dam being erected at that point, resort to the remedy given by the Mill Dam Law? We are of the opinion that he is confined to that remedy. The injury is really occasioned by erecting a dam upon and across a stream that is not navigable. The natural flow of the waters is restrained by the obstruction there. And, as a consequence, the waters of the lake are obstructed in their natural flow, and, being raised above their natural level, cause the injury complained of. Now, suppose the banks along the stream to be so high that a dam across the mouth thereof caused the waters to set back and so raise the lake above its natural level as to produce the same injury. Is it not quite obvious that in the case supposed the remedy must be by action under the Mill Dam Law? The dam would then clearly be " upon and across a stream that is not navigable." And the fact that such dam raised the waters in the lake, which is navigable, would not render the provisions of the Mill Dam Law inapplicable. Whether or not the waters of the lake be navigable, is a circumstance quite immaterial to the point we are considering. But the question is, Where is the dam erected, or the obstruction placed, which causes

the injury? Is it across a stream not navigable? If so, the provisions of the Mill Dam Law apply to the case, although the dam may be erected at the very threshold of the outlet. This is the vital question discussed upon the argument, and disposes of the case.

The judgment of nonsuit must therefore be affirmed.

*By the Court.*—Judgment affirmed.